# STATE OF MICHIGAN

# COURT OF APPEALS

COMPATIBLE LASER PRODUCTS, INC.,

        Plaintiff/Counter Defendant-
Appellant/Cross-Appellee,

v

MAIN STREET FINANCIAL SUPPLIES and
ARCHIE E. WELCH,

        Defendants/Counter
Plaintiffs/Third-Party Plaintiffs-
Appellees/Cross-Appellants,

v

SUSAN CAVE,

        Third-Party Defendant-
Appellant/Cross-Appellee,

and

ANTHONY CAVE,

        Third-Party Defendant-Cross-
Appellee.

UNPUBLISHED
September 20, 2016

No.   323122
Oakland Circuit Court
LC No.   2012-124642-CK

Before:  SAAD, P.J., and WILDER and MURRAY, JJ.

PER CURIAM.

       Plaintiff, Compatible Laser Products, Inc. (Compatible), and third-party defendant Susan Cave appeal as of right the order compelling the parties to arbitrate the remaining claims in this action involving, *inter alia*, claims of breach of contract.  Defendants Main Street Financial Supplies (Main Street) and Archie E. Welch cross-appeal as of right several other orders entered by the circuit court in this case.  We affirm.

-1-

# I. FACTS AND PROCEEDINGS

## A. RELEVANT FACTS

Susan and Anthony Cave are the sole owners of Compatible, which remanufactures toner cartridges and ships them on behalf of customers who provide Compatible with purchase orders. Main Street, owned by Welch, sold toner cartridges to Office Depot. Compatible began shipping for Main Street in 2007. Main Street was Compatible's customer and the two companies had an oral agreement.

Susan testified that Compatible acts on its customer's behalf and follows the customer's instructions. Susan did not recall telling Welch that she would not ship directly to his customers, but she agreed that when shipping on behalf of a customer there is a level of trust involved and that she would follow the customer's instructions and not harm the customer. She testified that Compatible does a "good job to represent" the customer. Susan had never shipped to a customer's client without the customer's consent. Susan did not recall having a conversation with Welch in which she told him that their relationship would be held in strict confidence, but she agreed that her relationships with dealers are held in strict confidence. Susan testified that she would ship pursuant to Welch's instructions and on behalf of Main Street, and that she represented Main Street.

In June 2011, Susan became concerned about the amount of Main Street's receivables that were past due, as well as the fact that the payment amounts had reduced. Susan sent an email to Welch on June 7, 2011, which indicated that Compatible would ship all orders through August 1, 2011, so long as Main Street was at "net-80" (payment within 80 days of being invoiced) and would ship all orders through September 30, 2011, if Main Street was at "net-70."

On July 6, 2011, after she was unable to reach Welch, Susan called Steve Gividen, a salesperson with Office Depot and Welch's friend, to inform Office Depot that Compatible would not be shipping products to its customers that day. Susan informed Gividen that Compatible would not ship until it received $25,000 from Main Street. According to Susan, Main Street owed approximately $160,000 at that time. Susan's intent was to "rattle some cages"; Welch had told her that his slowed payments to Compatible resulted from Office Depot's failure to pay him funds owed. Susan admitted that Welch was upset with her for contacting Office Depot.

Susan testified that, after her call to Gividen, Gividen approached her about Compatible becoming a backup vendor. Susan admitted that, under such an arrangement, Compatible's prices would have been lower than Main Street's because Main Street's profit margin would be eliminated. At the request of Office Depot, Susan concealed the vendor-application process from Welch. Susan informed Office Depot that she did not want Welch to lose the business. In October 2011, Compatible signed a vendor agreement with Office Depot. Susan admitted that she told Office Depot that she did not have any agreements with Welch. She was approved as an Office Depot vendor at the end of October. Susan heard that Office Depot had a corporate directive to eliminate the middlemen. However, she was not aware that she had actually received Office Depot's business until she received a purchase order in January 2012.

Gividen denied having asked Susan to become a backup vendor or fill out an application to become a backup vendor. However, Gividen heard that Compatible was in the process of becoming a direct vendor. Teresa Thompson, also an Office Depot employee, testified that Susan did not ask for a vendor application, but Thompson recalled talking to Susan about setting her up as a backup vendor. Gividen testified that Susan never told him that she had an agreement with Main Street not to ship directly to its customers and that, if she had, he would not have asked her to violate that agreement. Gividen never saw any documentation of a policy within Office Depot to eliminate the middleman and never discussed any such policy.

In late November 2011, based on the fact that Welch had not met the terms that had been agreed to in June 2011, the Caves decided to obtain a personal guaranty from Welch in order to receive more consistent payment from him. Welch was the only customer from whom the Caves sought a guaranty. The guaranty was drafted by an attorney. Welch told Susan that his attorney recommended a non-compete agreement. Susan testified that she said that she would look at a non-compete agreement. Susan intended for the guaranty and non-compete agreement to be separate documents.

On December 29, 2011, Welch emailed Susan, stating in part:

Finally heard back from my lawyer. He is fine with the guaranty but strongly suggested that it be ammended [sic] to indicate that Compatible guarantees not to call or sell directly to Office Depot or any OD accounts. If you're good with that ammend [sic] the guaranty, sent it over and I'll get it signed.

That same day, Susan responded, in part:

If you want to have something drafted in the form of a non-compete, that's fine, get one over to me. The guaranty, however, is something we need on file for all dealers that we extend credit to, especially in the large amounts.

Welch then replied, in part:

Sounds good (on the non-compete, not the lack of OD payments). I'll get my lawyer to draft one or find a standard non-compete. I'll sign guaranty and get it over to you.

In discussions with Welch in December 2011, Susan honored Office Depot's request not to inform Welch about its corporate directive to eliminate middlemen.

The personal guaranty was signed by Welch and dated January 4, 2012. The guaranty provided, in part:

In consideration of the extension of credit granted by Compatible Laser Products, Inc., the undersigned do hereby unconditionally guaranty payment of whatever amount, Main Street Financial Supply Co., Inc., shall at any time be owing on account of materials and services hereafter or previously delivered, furnished, or supplied, whether said indebtedness is in the form of invoices, statements, bills or open account.

In an email dated January 4, 2012, Welch stated that he had sent the guaranty form by mail and that he would "work on the non-compete form" and get it to Susan. Susan testified that she did not believe she would have actually signed the non-compete agreement if it restricted her from selling to Office Depot. According to Susan, there was no agreement regarding what Welch would receive in exchange for signing the personal guaranty.

Welch admitted guaranteeing the debts Main Street owed to Compatible but testified that he did so in exchange for Cave signing the non-compete agreement. Welch, however, also admitted that the personal guaranty did not mention the non-compete agreement and that he never actually sent a draft of the non-compete agreement to Compatible.

In January 2012, Office Depot switched its business to Compatible, i.e., Compatible began shipping directly to Office Depot without Main Street's involvement. Susan was still trying to obtain money from Welch at that time. On January 18, 2012, Compatible received a purchase order from Office Depot.

Anthony testified that Susan runs the company. He and Susan had discussions related to becoming a direct vendor. Anthony testified that he gave Susan his opinion, but the ultimate decision was Susan's.

Thompson testified that she believed that it was Rich Mercurio, another Office Depot employee, who decided to use Compatible instead of Main Street, further testifying that the decision to switch to Compatible was made because Compatible offered lower prices. Contrastingly, in an email dated February 8, 2012, Mercurio told Welch that he did not initiate the change, but acknowledged that Compatible's prices were lower and that, as such, Office Depot decided to eliminate the middleman. Nadine Brocci, also of Office Depot, testified that Office Depot decided to switch to Compatible because of pricing, a desire to limit exposure, and Main Street's failure to timely respond to customer service issues.

On February 8, 2011, Welch emailed Susan, stating in part:

I trusted you, you were my friend. You agreed to sign a non-compete if I signed the business and personal guaranty. In accordance with our agreement I mailed the signed guaranty on January 6th.

*   *   *

While I was in the process of getting the non-compete that you agreed to sign you went directly to Office Depot and took my customer base. You are aware that this is over $700,000.00 a year in revenue. By February 2, 2012 after taking my business you contacted a lawyer to sue me for your receivables after you destroyed my ability to pay and violated our agreement.

I am demanding that you go forward with the non-compete, return my customers, the lost revenue, and drop the law suit.

Welch admitted selling Compatible products worth $112,723.40 to Office Depot and receiving approximately $135,000 from Office Depot. Welch refused to pay Compatible

-4-

because he believed Compatible "defrauded" him out of his business. According to Welch, the only date on which he ever sent a written document disputing invoices was February 8, 2012.

Regarding his claims against Anthony, Welch testified that Anthony was an owner and officer of Compatible, and thus Welch assumed that Anthony discussed the decision to steal Main Street's business with the other officer, Susan (i.e., Anthony's wife). Welch testified that Anthony's email showed that he was involved in the process of lowering costs and production. Antony was also present at meetings. Welch admitted that the only evidence he had to support the claims against Anthony was that he was an officer, that he communicated with Welch, and that he was at meetings.

## B. PROCEDURAL HISTORY

### 1. CLAIMS

Compatible initiated the action below by filing a complaint against Main Street and Welch alleging that they owed unpaid account invoices in the amount of $112,723 (count I), alleging claims of breach of contract (count II) and breach of the personal guaranty (count III), and seeking attorney fees in the amount of $37,574.33 (count IV). Main Street and Welch filed numerous counterclaims against Compatible and third-party claims against Susan and Anthony. The counter and third-party complaint alleged claims of breach of an oral and written contract against Susan and Compatible (count I), promissory estoppel against Susan and Compatible (count II), intentional interference with contractual and/or advantageous relationship against Susan, Anthony, and Compatible (count III), unjust enrichment against Susan, Anthony, and Compatible (count IV), breach of fiduciary duties against Susan and Compatible (count V), fraud by misrepresentation against Susan and Compatible (count VI), silent fraud against Susan and Compatible (count VII), and conspiracy against Susan, Anthony, and Compatible (count VIII). Compatible also filed an amended complaint, which alleged claims of account stated against Main Street (count I), breach of contract against Main Street (count II), breach of guaranty against Welch (count III), common law conversion against Main Street and Welch (count IV), statutory conversion against Main Street and Welch (count V), breach of fiduciary duty against Main Street and Welch (count VI), fraudulent misrepresentation against Main Street and Welch (count VII), innocent misrepresentation against Main Street and Welch (count VIII), silent fraud against Main Street and Welch (count IX), civil conspiracy against Main Street and Welch (count X), concert of action against Main Street and Welch (count XI), and unjust enrichment against Main Street and Welch (count XII).

### 2. MOTION IN LIMINE

Compatible and the Caves filed a motion in limine, arguing that Main Street and Welch failed to file a witness list or list of proposed exhibits and failed to name any experts by December 10, 2012, as required by the amended scheduling order. Compatible and the Caves requested that Main Street and Welch be enjoined from introducing any exhibits at trial or calling any non-party witnesses to testify at trial. After Main Street and Welch filed a response and a hearing was held, the circuit court granted the motion precluding Main Street and Welch from introducing any exhibits and calling any non-party witnesses to testify at trial.

Subsequently, the circuit court also denied Main Street and Welch's motion for rehearing or relief from the order precluding them from introducing exhibits and calling non-party witnesses.

### 3. COMPATIBLE'S MOTION FOR SUMMARY DISPOSITION OF AMENDED COMPLAINT

Compatible moved for summary disposition under MCR 2.116(C)(8) and (10), arguing that there was no genuine issue of material fact regarding, or viable defenses to, its claims of breach of contract, account stated, or breach of guaranty. Regarding the breach of contract claim, Compatible argued that (1) Welch admitted that he agreed to pay Compatible for products shipped to Office Depot's customers, (2) Welch admitted that Main Street sold $112,723.40 of Compatible products to Office Depot for which Compatible was never paid, and (3) Main Street's defense that Compatible stole Main Street's business was not viable because it was Office Depot's decision to terminate its relationship with Main Street. Regarding the account stated claim, Compatible argued that Main Street failed to state a valid defense because there was an agreement on the amount due and a promise to pay that amount. With regard to the breach of guaranty claim, Compatible argued that Welch admitted that he signed the guaranty and a non-compete agreement was not a condition of that guaranty.

Main Street and Welch filed an answer to Compatible's motion for summary disposition in which they claimed that Compatible hindered and prevented their ability to pay by stealing their business, and that Compatible and Susan put Welch out of business while acting as their agents. Main Street and Welch also argued (1) that they had the right to a set-off for amounts owed by Compatible and the Caves that exceeded the amount owed by Welch and Main Street, (2) that Compatible was not paid because it breached the contract, (3) that Compatible's claims were barred because Compatible and the Caves were agents and fiduciaries of Main Street and Welch, (4) that Compatible and the Caves obtained Welch's guaranty through fraud and violations of their duties as agents and fiduciaries (5) that there was no bargained-for consideration for the guaranty because Compatible had already extended credit, (6) that there is no statutory or common law conversion claim for failing to pay amounts claimed owing under a contract, (7) that there were no grounds for an unjust enrichment claim because there was an express contract and promissory estoppel is inapplicable because Compatible had a breach of contract claim, (8) that the fraud claims were actually breach of contract claims because future promises are contractual and do not constitute fraud, (9) that Main Street and Welch were not fiduciaries of Compatible, and (10) that the conspiracy and concert of action claims failed for lack of an underlying tort and because a corporation cannot conspire or act in concert with an employee.

After a reply by Compatible, and a hearing on Compatible's motion, the circuit court (1) denied Compatible summary disposition regarding the breach of contract claim, determining that it was "possible for a reasonable juror to determine [Compatible] breached the contract by failing to provide the non-compete agreement," (2) granted Compatible summary disposition regarding the account stated claim, reasoning that Main Street and Welch did not contest the amount owed, but rather sought a set-off, and (3) denied Compatible summary disposition regarding the breach of personal guaranty and unjust enrichment claims, finding that a reasonable juror could find that Compatible breached the agreement first. The circuit court also denied Compatible summary disposition regarding the claims for conversion, fraud, breach of fiduciary duty, conspiracy, and

-6-

concert of action. With regard to the account stated claim, the circuit court entered judgment in favor of Compatible and against Main Street in the amount of $130,814.29.

### 4. COMPATIBLE AND THE CAVES' MOTION FOR SUMMARY DISPOSITION OF COUNTER AND THIRD-PARTY COMPLAINT

Compatible and the Caves moved for summary disposition under MCR 2.116(C)(8) and (10) regarding the counter and third-party complaint. They argued that Main Street and Welch failed to state any specific complaints against Anthony and admitted that they had no evidence to support the claims against him, and further that Main Street and Welch failed to state a claim upon which relief could be granted regarding the remaining claims.

Main Street and Welch filed an answer in which they argued that summary disposition was not appropriate because Susan was not credible. They argued that the Caves took Welch's business and violated their duties as agents. Main Street and Welch also argued that there were questions of fact regarding the terms of the contract and whether Compatible and the Caves breached the contract, further arguing that there were questions of fact regarding the promissory estoppel claim, whether an agency relationship existed, the fiduciary duty claim, the unjust enrichment claim, the intentional interference claim, the fraud claim, and the conspiracy claim.

Following the ensuing motion hearing, the circuit court entered an order granting in part and denying in part Compatible and the Caves' motion for summary disposition on the counter and third-party complaint. The circuit court granted summary disposition to Anthony on all counts and granted the motion regarding the claims of intentional interference, unjust enrichment, and conspiracy. On the other hand, the circuit court denied the motion regarding the claims of breach of contract, promissory estoppel, breach of fiduciary duties, fraud by misrepresentation, and silent fraud. Finally, the circuit court denied the motion for rehearing or relief from the order granting summary disposition filed by Main Street and Welch.

### 5. MAIN STREET AND WELCH'S MOTION FOR SUMMARY DISPOSITION OF AMENDED COMPLAINT

Main Street and Welch filed a motion for summary disposition regarding the amended complaint, arguing that (1) the statutory and common law conversion claims for failure to pay amounts owed under a contract failed because there were no specific funds, (2) the guaranty was unenforceable because there was no bargained-for consideration, which Susan admitted, (3) there was an oral agreement and, therefore, no unjust enrichment or promissory estoppel claims, (4) Compatible and the Caves violated agent and fiduciary duties, (5) the alleged fraud claims were actually breach of contract claims because the alleged misrepresentations were future promises to pay and were barred by the economic loss doctrine, (6) there was no material misrepresentation of fact or duty to support a silent fraud claim, (7) the claims of conspiracy and concert of action failed for lack of an underlying tort and because a corporation cannot conspire with or act in concert with an employee, and (8) Main Street and Welch did not have a fiduciary duty to Compatible and were not agents of Compatible or the Caves.

-7-

Compatible filed a response to Main Street and Welch's motion. It argued that the motion should be denied on the basis of the circuit court's prior ruling on Compatible's motion for summary disposition and its finding that there were genuine issues of material fact.

Following a hearing on the motion, the circuit court entered an order granting in part and denying in part Main Street and Welch's motion for summary disposition on the amended complaint. The circuit court granted the motion on the claims of common law conversion, statutory conversion, fraudulent misrepresentation, innocent misrepresentation, and silent fraud, but denied the motion on the claims of breach of contract, breach of guaranty, breach of fiduciary duty, civil conspiracy, concert of action, and unjust enrichment.

## 6. MAIN STREET AND WELCH'S MOTION FOR PARTIAL SUMMARY DISPOSITION

Main Street and Welch also moved for partial summary disposition under MCR 2.116(C)(10), arguing that Compatible and the Caves failed to state a valid defense to Main Street and Welch's claims that there was an oral contract between the parties. Following a response by Compatible and the Caves, including a cross motion for summary disposition on Main Street and Welch's counter complaint, and a hearing on the various motions, the circuit court ruled that Compatible and the Caves were agents of Main Street and Welch. The court reasoned that Compatible and the Caves failed to respond to the agency arguments or supply substantively admissible evidence to contradict such arguments. The circuit court further found that Compatible and the Caves failed to respond with any substantively admissible evidence to rebut the terms of the oral contract and granted the motion. The circuit court denied the motion regarding the existence of a fiduciary relationship, finding that a question of fact existed, and also denied Compatible and the Caves' counter motion for summary disposition. Finally, the circuit court denied Compatible and the Caves' motion for reconsideration.

## 7. MOTION TO COMPEL ARBITRATION

The circuit court entered an order granting Main Street and Welch's motion to compel arbitration of the remaining claims. The order provided that the circuit court "retains jurisdiction to enforce the terms of the arbitration order and any awards," further providing, "This is a final order that resolves the last pending claim and closes the case. Arbitration to be scheduled as soon as possible. . . . No stays pending any appeals have been made." This appeal and cross-appeal ensued.

## II. JURISDICTION

On cross-appeal, Main Street and Welch argue that the arbitration agreement bars Compatible and Susan's appeal regarding the breach of guaranty claim and other remaining claims. While the parties' agreement does not define this Court's jurisdiction, we agree that the July 23, 2014 order was not a final order because it provided that the circuit court retained jurisdiction. See *Green v Ziegelman*, 282 Mich App 292, 301 n 6; 767 NW2d 660 (2009) (concluding that the summary disposition order at issue was not a final order because it merely sent the case to arbitration and the case would return to the circuit court for entry of a judgment on the arbitration award). Therefore, the appeal is not proper as an appeal by right. See MCR 7.203(A)(1). However, Main Street and Welch did not move to dismiss the appeal on this

-8-

ground and we exercise our discretion to treat the faulty claim of appeal as an application for leave to appeal, grant leave, and decide the appeal and cross appeal on the merits. See MCR 7.203(B)(1).

Moreover, while the parties have agreed to arbitrate all of the remaining claims, we may review the circuit court's earlier rulings on the motions for summary disposition, including its findings related to the claims that were to be arbitrated. For example, while the breach of guaranty claim is a remaining claim to be arbitrated, we may review the circuit court's denials of summary disposition on that claim to determine whether the circuit court should have granted judgment as a matter of law.[1]

### III. SUMMARY DISPOSITION

Both parties dispute the circuit court's rulings on the various motions for summary disposition. We review a circuit court's ruling on a motion for summary disposition de novo. *Doe v Henry Ford Health Sys*, 308 Mich App 592, 596; 865 NW2d 915 (2014). Although the parties filed motions for summary disposition under MCR 2.116(C)(8) and (10), the circuit court considered evidence outside the pleadings; therefore, it could not have ruled under MCR 2.116(C)(8). See *Spiek v Mich Dep't of Transp*, 456 Mich 331, 338; 572 NW2d 201 (1998).

A motion for summary disposition under MCR 2.116(C)(10) tests the factual support of the plaintiff's claim and should be granted, as a matter of law, if no genuine issue of any material fact exists to warrant a trial. This Court considers the pleadings, affidavits, depositions, admissions and other evidence submitted by the parties in a light most favorable to the nonmoving party. A material question of fact exists when, after viewing the evidence in a light most favorable to the nonmoving party, reasonable minds could differ on the issue. [*Doe*, 308 Mich App at 596-597 (citations omitted).]

### A. BREACH OF GUARANTY CLAIM

Compatible and Susan contend that the circuit court erred by denying Compatible's motion for summary disposition on the breach of guaranty claim. We disagree.

In support of its holding, the circuit court reasoned that a reasonable juror could find that Compatible breached the guaranty first. The circuit court found "some support" in the email exchanges between the parties for Welch's claim that he signed the personal guaranty based upon an oral agreement that Compatible would execute a non-compete agreement.

---

[1] We also reject Compatible and the Caves' jurisdictional challenge to the cross-appeal. Although Main Street and Welch's claim of cross-appeal did not list the order regarding the motion in limine, that order was entered before the July 23, 2014 order and the claim of cross-appeal was properly viewed as taken from the July 23, 2014 order with the attendant right to challenge the earlier orders. See *Green*, 282 Mich App at 301 n 6.

The circuit court properly determined that there was a question of fact regarding the breach of guaranty claim. Although the guaranty expressly stated that the consideration was the continued extension of credit, the emails between Susan and Welch created a question of fact regarding whether Susan agreed to sign a non-compete agreement in exchange for the guaranty.

Compatible contends that any such evidence regarding a non-compete agreement was inadmissible under the parol evidence rule. We disagree. "The parol evidence rule may be summarized as follows: [p]arol evidence of contract negotiations, or of prior or contemporaneous agreements that contradict or vary the written contract, is not admissible to vary the terms of a contract which is clear and unambiguous." *UAW-GM Human Resource Ctr v KSL Recreation Corp*, 228 Mich App 486, 492; 579 NW2d 411 (1998) (quotation marks and citation omitted). "However, parol evidence of prior or contemporaneous agreements or negotiations is admissible on the threshold question whether a written contract is an integrated instrument that is a complete expression of the parties' agreement." *Id*.

> [E]xtrinsic evidence is admissible to show (1) that the writing was a sham, not intended to create legal relations, (2) that the contract has no efficacy or effect because of fraud, illegality, or mistake, (3) *that the parties did not integrate their agreement or assent to it as the final embodiment of their understanding*, or (4) that the agreement was only partially integrated because essential elements were not reduced to writing. [*Id*. at 493 (emphasis added).]

Thus, although the guaranty expressly stated that the consideration was continued credit, the parties' prior communications were admissible to show that the personal guaranty was not a complete expression of their agreement. Those communications create a question of fact regarding whether the personal guaranty was "the final embodiment of their understanding." *UAW-GM Human Resource Ctr*, 228 Mich App at 493. Based on the communications between Susan and Welch, a reasonable juror could find that Susan agreed to sign a non-compete agreement in exchange for the personal guaranty. Based on that finding, a reasonable juror might conclude that it was Compatible and Susan who first breached the guaranty agreement, not Welch. Accordingly, the circuit court properly denied summary disposition regarding the breach of guaranty claim.

Moreover, even though Welch never provided a non-compete agreement for Susan to sign, Susan's testimony suggested that she never intended to sign a non-compete agreement despite her statements to Welch. Susan testified that she did not believe she would have actually signed the non-compete agreement, particularly if it restricted her from selling to Office Depot. Based on this, Main Street and Welch argue that the guaranty was invalid because it was obtained through fraud and violations of fiduciary duties. Main Street and Welch's claims of breach of fiduciary duty, fraudulent misrepresentation, and silent fraud all related to, in part, the signing of the guaranty and are remaining claims to be decided in arbitration. Compatible and the Caves do not raise issues on appeal related to those claims. Given that those claims relate to the validity of the guaranty and have yet to be resolved, the circuit court properly denied summary disposition on the breach of guaranty claim.

## B. TERMS OF THE ORAL CONTRACT

Compatible and Susan argue that circuit court improperly granted partial summary disposition on the counter claim, determining the terms of the oral contract. We disagree.

In deciding a motion for summary disposition, a circuit court may not make findings of fact. *Jackhill Oil Co v Powell Prod, Inc*, 210 Mich App 114, 117; 532 NW2d 866 (1995). However, summary disposition is proper if no genuine issues of material fact exist to warrant a trial. *Doe*, 308 Mich App at 596.

Here, the circuit court found that Compatible and the Caves failed to respond with any substantively admissible evidence to rebut the terms of the oral contract alleged by Main Street and Welch. Accordingly, the circuit court found that the terms of the oral contract were as follows:

A. Susan Cave and Compatible would ship on behalf of Main Street and Welch to Office Depot and its customers;

B. Susan Cave and Compatible would not have contact with or call Office Depot or its customers without Archie Welch's/Main Street's knowledge and consent;

C. Caves and Compatible would keep all matters regarding the relationship, conversations and financial information with Main Street and [Welch] confidential;

D. Susan Cave and Compatible would only act pursuant to Arch Welch's/Main Street's instructions;

E. All of the shipping would be through Main Street and representing Main Street;

F. The relationship and conversations between Welch/Main Street with Compatible would be in the strictest confidence;

G. Main Street and [Welch] were Compatible customers; and

H. Office Depot and its customers were Main Street and [Welch's] customers.

On appeal, Compatible and Susan only dispute three of the above terms. First, they contend that the circuit court's finding that Susan and Compatible would ship on behalf of Main Street and Welch to Office Depot and its customers was inconsistent with Welch's admission that Compatible and the Caves agreed they would not ship directly to Office Depot. However, Compatible and the Caves did not make this argument below in response to Main Street and Welch's motion. Moreover, this argument lacks merit because the fact that Compatible and the Caves were not to ship *directly* to Office Depot is not inconsistent with the finding that they were to ship *on behalf* of Main Street to Office Depot. The term "directly" implies shipping without Main Street's involvement. Susan testified that Compatible ships on behalf of customers such as Main Street and that she shipped to Office Depot's customers on behalf of Main Street.

Compatible and Susan also dispute the circuit court's finding that Compatible and Susan would not have contact with or call Office Depot or its customers without Main Street and Welch's knowledge and consent. Susan testified that she never contacted another dealer's customer to obtain business. She also admitted that Welch was upset with her when contacted Office Depot without his knowledge, but she did not recall Welch telling her she was not authorized to do that, only that she should call him as soon as possible. Welch, on the other hand, testified that he told Susan that she had no right to call the customer directly. Compatible and Susan attach to their brief on appeal pages of Susan's deposition in which she testified that she was told to contact customers directly if they had questions and it was not unusual for her to contact Office Depot without first contacting Welch. However, they admit that those pages were not attached to Main Street and Welch's motion, and Compatible and Susan did not attach those pages to their response to Main Street and Welch's motion. Accordingly, those pages are not part of the record and, based on the testimony before it, the circuit court did not err by finding no genuine issue of material fact regarding this term. See *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 380-381; 775 NW2d 618 (2009) (holding that a trial court has no duty to independently pore over the record; rather, the parties have a duty to cite evidence in support of their respective positions).

Finally, Compatible and Susan dispute the circuit court's finding that the relationship and conversations between Main Street and Welch with Compatible would be in the strictest confidence. They rely on Susan's testimony that she did not have a conversation with Welch in which she told him that their relationship would be held in the strictest confidence; however, Susan also testified that her relationships with dealers are held in strict confidence. Thus, the circuit court did not err by finding no genuine issue of material fact regarding this term.

## C. AGENCY

Compatible and Susan contend that the circuit court erred by granting Main Street and Welch's motion for partial summary disposition, determining that Compatible and Susan were agents of Main Street or Welch. We disagree.

The circuit court found that Compatible and the Caves were agents of Main Street and Welch, reasoning that Compatible and the Caves "failed to respond to the argument regarding agency." The existence of an agency relationship is a question of fact. *Hertz Corp v Volvo Truck Corp*, 210 Mich App 243, 246; 533 NW2d 15 (1995). Main Street and Welch cited *Meretta v Peach*, 195 Mich App 695; 491 NW2d 278 (1992), in support of their agency argument. In *Meretta*, this Court stated that "[a]n agency relationship may arise when there is a manifestation by the principal that the agent may act on his account" and "[t]he test of whether an agency has been created is whether the principal has a right to control the actions of the agent." *Id*. at 697. Main Street and Welch attached deposition testimony of Susan to their motion for partial summary disposition that supported the existence of an agency relationship. Specifically, Susan testified that Compatible shipped on behalf of customers and shipped according to Welch's instructions. Although Compatible and the Caves denied the allegation that they were agents of Main Street and Welch, they did not specifically address the agency issue in their brief. Thus, the circuit court properly granted summary disposition because there was no genuine issue of material fact on the issue of agency.

Moreover, Compatible and Susan's argument on appeal lacks merit. On appeal, Compatible and the Caves focus on the fact that Welch admitted that Main Street was Compatible's customer, which they claim is inconsistent with Compatible being Main Street's agent. However, Susan's testimony established that (1) she represented her customers, such as Main Street, (2) Compatible acted on behalf of its customers, and (3) Compatible followed the instructions of its customers. Thus, while Main Street and Welch were customers of Compatible, there was no genuine issue of material fact that Compatible and Susan were also agents of Main Street and Welch.

## D. BREACH OF FIDUCIARY DUTY

Main Street and Welch argue that there were material issues of fact regarding whether Compatible and the Caves were fiduciaries of Main Street and Welch. This issue is moot because Main Street and Welch have already received the relief they request.

The circuit court denied Main Street and Welch's motion for partial summary disposition regarding the existence of a fiduciary relationship, finding that it presented a question of fact. Accordingly, Main Street and Welch's issue on cross-appeal related to this claim, in which they argue that there is a question of fact regarding whether Compatible and the Caves are fiduciaries of Main Street and Welch, is moot. See *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010) ("An issue is moot if an event has occurred that renders it impossible for the court to grant relief. An issue is also moot when a judgment, if entered, cannot for any reason have a practical legal effect on the existing controversy." (citations omitted).) See also *People v Billings*, 283 Mich App 538, 548; 770 NW2d 893 (2009) ("Because defendant has already received the relief that she requested, this issue is moot.").

## E. ACCOUNT STATED

Main Street and Welch contend that the circuit court erred in granting summary disposition on Compatible's account stated claim of $130,814.29. We disagree.

An "account stated" refers to a "contract based on assent to an agreed balance," which, like all contracts, must be created through mutual assent. "[P]arties *assent* to a sum as the correct balance due from one to the other; and whether this operation has been performed or not, in any instance, must depend upon the facts." An express contract arises when the parties expressly agree to the sum due. A party's acceptance may also be inferred when the party makes payments on the amount due or receives an accounting and fails to object within a reasonable time. [*Dunn v Bennett*, 303 Mich App 767, 770-771; 846 NW2d 75 (2013).]

Here, Welch admitted that he sold $112,723.40 of Compatible's products to Office Depot.[2] Welch also testified that he always paid the invoices and that he never disputed invoices until February 8, 2012. At that time, he refused to pay because he claimed that Compatible and the Caves defrauded him. Welch's express agreement with the balance due established an account stated. See *Dunn*, 303 Mich App at 770-771. Although Main Street and Welch refused to pay based on their claims of breach of contract, breach of fiduciary duty, and fraud, these were not defenses to Compatible's account stated claim. Rather, as the circuit court found, Main Street and Welch were seeking a setoff. As discussed below, if Main Street and Welch succeed on any of their remaining claims in arbitration, they may be entitled to damages that may "setoff" the money owned to Compatible and the Caves.

## F. CLAIMS AGAINST ANTHONY CAVE

Main Street and Welch argue that the circuit court erred in granting summary disposition in favor of Anthony on all counts. We disagree.

The counter and third-party complaint only mentioned Anthony with regard to the claims of intentional interference, unjust enrichment, and conspiracy. The circuit court dismissed the claims against Anthony, holding that there was "a lack of substantively admissible evidence as to any liability." On cross-appeal, Main Street and Welch argue that because the circuit court found Anthony was an agent, he could be liable for violating fiduciary duties. Main Street and Welch also argue that there were questions of fact regarding Anthony's liability for unjust enrichment, intentional interference, and conspiracy.

As discussed below, the unjust enrichment claim was properly dismissed because there was an express contract and the intentional interference claim was properly dismissed because there was no genuine issue of material fact regarding causation. Moreover, the circuit court properly found a lack of evidence to support Anthony's liability for any of the claims. As Compatible and the Caves correctly point out, Welch admitted that the only evidence he had to support the claims against Anthony was that Anthony was an officer of Compatible, that he communicated with Welch, and that he was at meetings. While Main Street and Welch claim that Anthony "agreed" with Susan's decisions, Anthony's testimony established that Susan ran the company and made the decisions. Accordingly, the circuit court properly granted summary disposition in favor of Anthony on all counts.

## G. UNJUST ENRICHMENT

Main Street and Welch argue that there were material issues of fact regarding their unjust enrichment claim. We disagree.

The circuit court granted summary disposition in favor of Compatible based on its finding that it was "not disputed that Welch and/or Main Street did not confer a benefit upon

---

[2] In addition to the $112,723.40 in damages, the circuit court also awarded $17,865.89 in interest and $225 in taxable costs for a total award of $130,814.29.

Compatible or Susan Cave." "[U]njust enrichment is (1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Keywell & Rosenfeld v Bithell*, 254 Mich App 300, 327; 657 NW2d 759 (2002) (quotation marks and citation omitted). "When unjust enrichment exists, the law operates to imply a contract in order to prevent it. However, a contract will be implied only if there is no express contract covering the same subject matter." *Id*. at 327-328 (quotation marks and citation omitted). While the circuit court found Main Street and Welch did not confer a benefit upon Compatible or Susan, Main Street and Welch's unjust enrichment claim failed because there was an express contract covering the same subject matter. Main Street and Welch's claims of breach of contract and unjust enrichment involved similar allegations. As discussed above, the circuit court made findings regarding the terms of the oral contract, including that:

A. Susan Cave and Compatible would ship on behalf of Main Street and Welch to Office Depot and its customers;

B. Susan Cave and Compatible would not have contact with or call Office Depot or its customers without Archie Welch's/Main Street's knowledge and consent;

C. Caves and Compatible would keep all matters regarding the relationship, conversations and financial information with Main Street and [Welch] confidential;

D. Susan Cave and Compatible would only act pursuant to Arch Welch's/Main Street's instructions;

E. All of the shipping would be through Main Street and representing Main Street;

F. The relationship and conversations between Welch/Main Street with Compatible would be in the strictest confidence;

G. Main Street and [Welch] were Compatible customers; and

H. Office Depot and its customers were Main Street and [Welch's] customers.

Main Street and Welch's breach of contract claim remained to be decided at arbitration. Because the circuit court determined that a contract existed, it properly granted summary disposition on the unjust enrichment claim.

## H. INTENTIONAL INTERFERENCE

Main Street and Welch argue that the circuit court erred in granting summary disposition in favor of Compatible and the Caves on their claim of intentional interference. We disagree.

The basic elements of tortious interference with a business relationship are the existence of a valid business relation or expectancy, knowledge of the relationship or expectancy on the part of the interferer, an intentional interference

inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the party whose relationship has been disrupted. [*Lakeshore Community Hosp, Inc v Perry*, 212 Mich App 396, 401; 538 NW2d 24 (1995).]

> In order to establish tortious interference with a contract or business relationship, plaintiffs must establish that the interference was improper. In other words, the intentional act that defendants committed must lack justification and purposely interfere with plaintiffs' contractual rights or plaintiffs' business relationship or expectancy. The "improper" interference can be shown either by proving (1) the intentional doing of an act wrongful per se, or (2) the intentional doing of a lawful act with malice and unjustified in law for the purpose of invading plaintiffs' contractual rights or business relationship. [*Advocacy Org for Patients & Providers v Auto Club Ins Ass'n*, 257 Mich App 365, 383; 670 NW2d 569 (2003), aff'd 472 Mich 91 (2005) (citations omitted).]

Although there may have been a question of fact regarding whether Compatible and the Caves engaged in improper interference, the circuit court found no evidence that Office Depot made the change to Compatible based on wrongful acts attributable to Susan. Thus, the circuit court found no evidence of causation; i.e., that an intentional interference induced or caused a breach of termination of the relationship or expectancy. See *Lakeshore*, 212 Mich App at 401.

According to Susan, Gividen of Office Depot approached her about Compatible becoming a backup vendor. Gividen denied that he asked Susan to become a backup vendor; however, Thompson also testified that Susan did not ask for a vendor application, Thompson discussed with Susan the possibility of Compatible becoming a backup vendor, and Thompson believed that it was Mercurio, also of Office Depot, who decided to use Compatible instead of Main Street. Susan testified that she heard that Office Depot had a corporate directive to eliminate the middlemen and Mercurio's email supports the existence of a corporate decision to eliminate the middlemen. Susan also admitted that she told Office Depot that she did not have any agreements with Welch. Office Depot decided to switch to Compatible not only because of the pricing, but also based on customer service issues with Main Street. According to Welch, however, there was no national plan to eliminate the middlemen.

Given this testimony, the circuit court properly found no question of fact regarding whether Compatible and the Caves' actions caused the termination of Office Depot's relationship with Main Street; it was Office Depot's unilateral decision to end the relationship. Although Susan admitted that she told Office Depot that she did not have any agreements with Welch, there was no evidence that this statement affected Office Depot's decision to switch to Compatible. Gividen testified that he would not have asked Susan to violate any agreement with Compatible, but Gividen did not make the decision to switch to Compatible. Moreover, Welch's own testimony that Office Depot did not have a national plan to eliminate the middlemen, of which he would have no personal knowledge, did not create a genuine issue of material fact for trial.

## I. CONSPIRACY

Main Street and Welch contend that there are material issues of fact regarding whether Anthony, Susan, and Compatible engaged in a conspiracy. We disagree.

"A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Admiral Ins Co v Columbia Cas Ins Co*, 194 Mich App 300, 313; 486 NW2d 351 (1992). This Court has stated that "there can be no conspiracy between a corporation and its directors if the directors are acting on behalf of the corporation." *Blair v Checker Cab Co*, 219 Mich App 667, 674; 558 NW2d 439 (1996). An exception exists "where the directors have an independent personal stake in a particular action and, therefore, are actually acting on their own behalf." *Id*. at 674-675.

The circuit court granted summary disposition in favor of Compatible and the Caves, finding a lack of evidence to support the conspiracy claim. As discussed above, summary disposition was properly granted in favor of Anthony on all counts. Accordingly, only Susan and Compatible could be liable for conspiracy. There was no evidence that Susan had any independent personal stake such that she was acting on her own behalf. Accordingly, the circuit court properly granted summary disposition in favor of Compatible and the Caves on this claim.

## J. BREACH OF CONTRACT

Main Street and Welch contend that there are material issues of fact regarding Compatible and the Caves hindering and preventing Main Street and Welch's ability to pay by stealing their business and breaching the contract. Compatible filed a motion for summary disposition on its breach of contract claim against Main Street and Welch. Main Street and Welch argued in response to the motion that Compatible hindered and prevented their ability to pay by stealing their business. The circuit court denied summary disposition regarding the breach of contract claim, finding that it was "possible for a reasonable juror to determine [Compatible] breached the contract by failing to provide the non-compete agreement." Accordingly, Compatible's breach of contract claim and any defenses were to be decided in arbitration. Therefore, Main Street and Welch's issue on cross-appeal related to this claim, in which it argues that there is a question of fact regarding whether Compatible and the Caves hindered and prevented their ability to perform, is moot. See *Gen Motors Corp*, 290 Mich App at 386; *Billings*, 283 Mich App at 548.

## IV. RIGHT TO A SETOFF

Main Street and Welch contend that they have a right to setoff. This issue is abandoned.

"It is axiomatic that where a party fails to brief the merits of an allegation of error, the issue is deemed abandoned by this Court. And, where a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned." *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999) (citations omitted). Main Street and Welch provide one paragraph of argument in support of this issue and merely state that they are entitled to a setoff. Because Main Street and Welch fail to properly brief the merits of their argument and fail to cite any legal authority supporting their argument, this issue is abandoned. Nonetheless, the circuit

court recognized that Main Street and Welch were seeking a setoff; however, because Main Street and Welch have not yet succeeded on any of their claims, they were not entitled to a setoff below. If Main Street and Welch succeed on any of their remaining claims in arbitration they may be entitled to damages from Compatible or the Caves that may "set off" the amount they owe Compatible and the Caves.

## V. MOTION IN LIMINE

Main Street and Welch contend that the circuit court should have denied Compatible and the Caves' motion in limine. This issue is moot. The order in limine precluded Main Street and Welch from introducing exhibits or calling non-party witnesses to testify *at trial*, but a trial was never held in this case. Rather, after ruling on the motions for summary disposition, the parties agreed to arbitrate the remaining claims. Accordingly, it is impossible for this Court to grant relief. See *Gen Motors Corp*, 290 Mich App at 386.

Affirmed. Neither party having prevailed in full, no costs may be taxed. See MCR 7.219.


/s/ Henry William Saad
/s/ Kurtis T. Wilder
/s/ Christopher M. Murray